not being a very good person. That doesn't mean he loses his acceptance of responsibility pursuant to the guidelines. Well he doesn't he doesn't have an entitlement to it and you would agree would you not that it's the unusual case. I would your honor. Where you can obstruct and get this so you're gonna have to persuade us that he falls outside of the normal run of cases. I because of the obstruction issue which puts us in a different category. Well that's right you know so the and you're not challenging the obstruction enhancement. No. So wisely I would say given what he did. Judge he pled guilty well in advance of the trial. It was I was trial counsel for Mr. Furando and so I can indicate. What difference does it make it all comes down to the fact who cares that he pled guilty early if he's out threatening witnesses later. Well I think two things judge that makes the difference. We had a plea agreement with the government that really began the light part of December of 2014. January of 2015 the government then brought an allegation involving his prior conduct which then requested the government to redraw the plea of guilty. So we'd gone through a proffer at Washington DC with him. We had indicated to him and the we're going to plead guilty. We had a written signed plea agreement which the government then in January of 2015 pulled based upon Mr. Furando's conduct involving Kristen Alexander. Clearly that had nothing to do with the case itself. It was a situation where Miss Alexander had been his personal assistant and during that period of time. It had nothing to do with the case itself. She certainly is implicated in his scheming and I guess I want to get back to the the whole concept of 3E 1.1 is that somebody has really accepted responsibility. They're remorseful. They they're sorry they did it. They're not just sorry they got caught. They're sorry they did it. The district court makes a factual determination about that to which we give deference. We give clear error review and Judge Barker looked at Mr. Furando's conduct and said I don't think he's sorry. I don't think he's remorseful. Look at this behavior even after the guilty plea. Guilty plea is good but it's not an assurance of acceptance. No I agree with the court that it's not an assurance but clearly that when the indication is that the information that the government presented was kind of collateral not in effect. Why do you keep calling collateral though? Well two things happen. One the incident involving Kristen, the cat as she's referred to in the transcript, was clearly pretrial and plea and that was an indication when she had worked for him and became part of the company that all those activities and anger between those two really didn't relate at all to him interfering with her in that case. The second incident involving when Mr. Furando makes his plea to the court after he spent one year almost in jail on the pretrial release violation and so he's got the punishment that the court already meted out to him based upon the fact of his conduct and his misconduct and that happened clearly prior to the guilty plea and so Mr. Furando not only received the punishment of the year on pretrial release where he was detained but then when we come up for the guilty plea the government indicated that Mr. Furando had pled to the case. Three other co-defendants immediately followed suit and pled to those same clients cases post Mr. Furando's plea and so he saved the government the required period of time for trial. He was given his proffers in advance so there was nothing that indicated that information that the he hadn't accepted responsibility. Well except you're you're focusing on the savings to the government which is a factor but the bigger question is whether it's the whole reason why you give somebody a shorter sentence because if you think they're genuinely sorry for what they did then the likelihood of recidivism is less there you know you maybe don't need to punish them as much they're incommensurables that go along with that. He isn't that person. Well judge or at least the district judge it's hard for me to say the district judge clearly erred in saying he isn't that person. Well if you look at the application notes under 3E11 you would indicate it says note that a defendant is not required to volunteer or firmly admit relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection A. Right but he's not. Did you practice law prior to the sentencing guidelines? Do I look like I Yes. Do you think you could have possibly even made this argument to a sitting judge that didn't have the sentencing guidelines before? It would probably been a difficult process at that time. I would guess it would be a difficult process. Yeah I mean there's no way you would have even thought about it. Judge Moody wouldn't have bought that argument nor would you. It's just there's nothing more that I can think of for a sentencing judge to consider. Verily Judge Keene you won't either. That's why I said he wouldn't either. The defense legitimately accepted responsibility. I mean I can't think of anything else. Have I had those arguments were made to me before? It becomes... Now she has to support them because of the guidelines. Well and clearly that's the case. The problem we had was that the government pulled the plea, a whole series of conduct that didn't change Mr. Ferrando in his position that I'm going to plead guilty, I'm going to acknowledge. We even had a separate proffer with justice prior to the plea where they had additional information that they were seeking from Mr. Ferrando where he agreed to do that. So we have a whole series of things that he didn't change in his attitude or his conduct about his plea of guilty. And a lot of the government used at the time of his actual sentencing certainly related to the fact of that period of time from when the original plea was pulled until we did the actual plea in January of 2016. And so for those various reasons I believe that Mr. Ferrando clearly is entitled to his acceptance responsibility and we think it's outside the obstruction of justice provision. And during that period of time not only did he participate and admitted his clearly participation in a huge fraud of $55 million, he didn't contest any of the other guidelines. And so we're just focusing now on the guideline in question which we think that Judge Barker should have given him credit for in spite of the obstruction of justice, in spite of her also punishing him on the side really of having him spend a year in jail post the sentence in this particular case. Okay, thank you. Thank you, Your Honor. Mr. Bielert. Good morning and may it please the court. My name is Jeff Bielert. I'm here on behalf of the United States. There is nothing extraordinary about this case that would warrant giving Mr. Ferrando an adjustment for acceptance of responsibility. I think as the court rightfully recognized, the sentencing guidelines are meant to give a defendant credit for voluntarily giving up criminal activity. In this case, Mr. Ferrando discusses how these are somehow collateral actions, that his misconduct somehow had nothing to do with the conduct that he was charged with. And under this court's precedent, it's well accepted that any post-arrest conduct can be considered by the district court. And even here, we looked at post-plea conduct. When Judge Barker had to consider whether Mr. Ferrando had accepted responsibility, she specifically referred to the conduct that he had committed while incarcerated, waiting to be sentenced. And as the court correctly recognized, he threatened to kill two witnesses. He threatened to kill two witnesses to testify against him at this sentencing. And oh, by the way, he went over to his cellmate and asked him to participate in a drug trafficking activity to bring LSD from New Jersey to Indiana. He's just trying to keep himself active. And those actions are exactly what warrant the district court to say that he does not deserve credit for accepting responsibility. The district court did exactly what she was required to do here. And in another case, in Keter, this court looked at the deferential standard of review that it applies and said that when the district court has found that it's not an extraordinary case, it makes it almost impossible to gainsay what the district court did. And that's exactly right here. All the conduct that Mr. Ferrando committed from the time of his arrest, from the time of the indictment, supports a finding by the district court that he had not accepted responsibility. So am I correct, the only things on the, if you think of the balance, on the acceptance side are, number one, the guilty plea, including the timing, and number two, the proffers? So the proffers, yes, I think his argument is that I, like you heard him say this morning, that there had been... If there had been any of you, I would have said something, but since it's Judge Bauer, I'm not. Return it once, all is forgiven. But no, Your Honor, the notion is that there's, that there had been this earlier attempt at a plea agreement, and that's absolutely correct. And, and they're correct to point out that in 2014, that the government was in discussions with Mr. Ferrando, and that we'd even discussed a cooperation, saying that he would cooperate with us. And then the government learns about this so-called misconduct in December of 2013, which was the activity where he smashed one of the witnesses' face to the ground, bent her fingers back, stole her cell phone from her, smashed that, ripped her hair out. I mean, this was, this was a violation of not only his pretrial release, but also it was an attack. And they... She went to the hospital. She did go to the hospital, Your Honor, and she was transported from the police station to the hospital. And what did Mr. Ferrando do when that occurs? He tells her to pop Ritalin, and he's going to take her to the police station and make her lie to the police. He gets her to lie to the police, and then he gets her to lie to the police at the, or lie to the district court judge at the revocation hearing. So this, when the government learned about those activities, yes, it pulled the agreement that it was in place. Mr. Ferrando ended up pleading guilty in April of 2015. As the government discussed, this was going to be a four-to-five-week trial. At that time, it was about one month before the beginning of the trial, and the government obviously had taken steps to prepare. It was going to be a long trial. There had been a pretrial conference. The government had filed pretrial motions. There's nothing to suggest that a one-month period before trial would somehow not be warranted for the district court to say that the government had not prepared for the trial. Were there expert witnesses involved? I'm not sure about that, Your Honor. I think that the witnesses related to the fraud itself, and then some of the witnesses that end up testifying at the sentencing. But even, let's just assume that it did. Let's assume that it did save the government time and effort. All of that time and effort that was somehow saved can be outweighed by misconduct, that the district court correctly recognized, and I would refer to the cellmate's testimony, which the district court credited. The district court credited the testimony of Mr. Robinson, the cellmate, and said that she didn't believe that he'd accept the responsibility. So, it outweighs any effort by Mr. Frander to suggest that somehow saved the government time and effort in this case. As the court recognized, acceptance of responsibility is not a matter of right. There's no bright-line rule that says that when a defendant pleads guilty, he automatically gets credit for acceptance of responsibility. And given the deferential standard of review and Judge Barker's careful consideration of this matter, the government asks that the court affirm the sentence for Mr. Frander. Unless there's any other further questions? I don't see any. Thank you very much. Thank you, Your Honor. Anything further, Mr. Voyles? Just briefly, Your Honor. Judge, I think a couple of the, you indicated the fact that he pled guilty and the government may very well have saved the expense of trial. There were experts that the government had intended to call on the issue of the fraud involving the fuel. But that cuts both ways, of course, because if there were experts, they certainly didn't find them 30 days before the trial. They would have been out there preparing. That's correct. Clearly, he was punished significantly for his pretrial misconduct, even before sentencing, when we refer back to the fact that Judge Barker, in August of 2014, found that, and in March, imposed the sentence of pretrial release was violated. Why is pretrial release an actual punishment for a murder threat? Well, that was, the pretrial release happened, really, as a result of the physical altercation that happened between the woman referred to as Kat in the transcript and Mr. Frander, who was also injured, as she used her car against him. So that matter was dealt with at the local level, and ultimately, no charges were filed against either one. So we believe that the fact that he did spend the year in jail is an exception, that under the provision of 3C11, that we are outside, and we are entitled to the acceptance of responsibility in this case. You were a plaintiff, were you not? Yes, sir. Thank you. You're welcome. Thanks a lot. Thanks to both counsel. We will take the case under advisement.